(173 App. Div. 569)

### OAKS v. CITY OF ROCHESTER.

(Supreme Court, Appellate Division, Fourth Department. June 15, 1916.)

1. VENDOR AND PURCHASER ☞174—DEDUCTION FROM PRICE—PERFORMANCE OF CONTRACT.

Where a landowner contracted to sell her premises to the board of education of a city, stipulating that, should she be unable to acquire satisfactory title to an alleyway, it might be condemned by the city and the expense thereof deducted from the price, condemnation proceedings being thereafter instituted to condemn the strip, title to which was in dispute, though the common council of the city had the power to reject the report of the commissioners of appraisal, it was required to act in good faith and for a sufficient reason.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 358, 359; Dec. Dig. ☞174.]

2. VENDOR AND PURCHASER ☞174—DEDUCTION. FROM PRICE—CONDEMNING LAND.

Where thereafter the city instituted proceedings to condemn such alleyway, an award of $350 to adverse claimants being made, but the law committee of the common council reported that the determination reached by the commissioners of appraisal was erroneous, and would not be sustained on appeal, whether the condemnation proceedings were valid or not, the landowner was entitled to the contract price less the award payable at the time fixed by her contract, dated from the time when the condemnation proceedings should have been finally determined.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 358, 359; Dec. Dig. ☞174.]

Appeal from Special Term, Monroe County.

Action by M. Louise E. Oaks against the City of Rochester. From a judgment dismissing the complaint on the merits, plaintiff appeals. Judgment reversed, and judgment directed in favor of plaintiff.

---

Argued before KRUSE, P. J., and FOOTE, LAMBERT, MERRELL, and DE ANGELIS, JJ.

Edwin C. Smith, of Rochester, for appellant.

B. B. Cunningham, Corp. Counsel, of Rochester, for respondent.

DE ANGELIS, J.   The action was brought, among other objects, to compel the specific performance of a contract entered into by and between the board of education of the city of Rochester, on behalf of the city and the plaintiff, whereby the board of education purchased from the plaintiff a lot for school purposes, by accepting an option for such purchase given by the plaintiff to such board, and to declare certain proceedings for the condemnation of the lot, including a right of way over a 10-foot strip thereof immediately south of School No. 10 on the west side of Chatham street and extending 73 feet in depth, to be legal, and a certain resolution of the common council, rejecting the report of the commissioners in the condemnation proceedings and providing for the appointment of other commissioners, to be illegal.

The answer sets up the defense that the proceedings for condemnation were void, because at the threshold thereof the resolution of the school board invoking the machinery of the common council and law department of the city to condemn the lands in question was not passed at a regular meeting of the school board or by a majority of its members, and because a resolution of the school board, regularly and legally passed later and before the condemnation proceedings were begun, was the only action of the school board that would justify condemnation proceedings in the premises.

The sole question for determination on this appeal is whether or not the trial court was right in determining the condemnation proceedings were void as to this plaintiff.   The city of Rochester is a municipal corporation existing under a charter contained in chapter 755 of the Laws of 1907 and its amendments.   Sections 444 and 446 of the act were amended by chapter 384 of the Laws of 1911.   There are five commissioners of schools constituting the board of education.   Sections 14 and 381 of the Charter.   The school board has power to purchase land and build schoolhouses.   Subdivision 4 of section 383. In case the board needs lands for school purposes, and cannot agree with the owner or owners thereof to purchase the same, it can by request require the common council and the law department of the city to acquire title thereto by condemnation proceedings.   Section 90. See also sections 88 and 89.   On the 13th day of May, 1913, the common council received from the secretary of the board of education the report of which the following is a copy:

"May 13, 1913.

"To the Honorable the Common Council of the City of Rochester:

"The board of education respectfully reports to your honorable body that it is unable to purchase the following real estate deemed necessary by it for school purposes, namely: All that tract or parcel of land situated on the west side of Chatham street, in the city of Rochester, Monroe county, New York, immediately adjoining No. 10 School on the north, and being 33 feet front in Chatham street and 165 feet deep.   Also all that tract or parcel of land situated on the west side of Chatham street adjoining No. 10 School

on the south, and being 35 feet front on Chatham street and 73 feet deep. The board of education, therefore, requests that condemnation proceedings be instituted to acquire the same.

"Respectfully yours,      Board of Education, by J. S. Mullan."

Thereafter and on the same day the common council adopted and enacted an ordinance directing the corporation counsel to institute condemnation proceedings agreeably to the request, which ordinance was to take effect immediately. The report of the school board was regular in form in all respects and authenticated by the secretary in the usual manner. It appeared on the trial, however, that the report of the school board was not adopted at a regular meeting of the board, but was only authorized, so far as any authority existed for it, by two members of the board, the president and another. J. Sankey Mullan, the secretary of the board, testified that there was at a committee meeting of the board on the 9th day of May, 1913, a discussion regarding the purchase of the Oaks property; that Mr. Adler, one of the members of the board, was authorized to go ahead with the condemnation proceedings if $4,500 would not be accepted to purchase the property; that on the 13th day of May, 1913, Adler came into the office of the school board and stated that the Oaks people would not accept the $4,500; that he had in his possession the resolution, a copy of which the witness had in his hand; that to the best of witness' recollection Mr. Duffy, the president of the board, was the only other member in the office; that they consulted together, and he was uncertain whether they called up any of the other members or not, he would not be positive, but there was no meeting of the board, committee meeting, or any other meeting on that day; that Mr. Adler stated that the common council met that night, and it was necessary to get this before them on the 13th, and that was why the copy was sent over, but no formal meeting of the board had; that on the 17th Adler reported to the board in a committee meeting that the Oaks property could be purchased at the $4,500, and it was not necessary to go ahead with the condemnation proceedings—in other words, it was not necessary to ratify the resolution at a board meeting, and it never was ratified.

On the 12th day of June, 1913, the plaintiff executed and delivered to the board of education an option by which she undertook to sell and convey to the board the property in question for $4,500. The option was to be accepted within 30 days from its date, and the sale to be completed within 30 days after the acceptance. The option contained this provision:

"In the event that it becomes impossible for me to acquire a satisfactory title to that portion of said premises immediately adjoining said school, and being ten (10) feet in width and seventy-three (73) feet deep, heretofore reserved for use as an alley, I hereby agree that said alleyway may be condemned by the city of Rochester, and that the expense of condemnation proceedings and such award as may be granted by the commissioners appointed in said proceedings shall be deducted from the aforesaid purchase price, to the end that the net cost to the city for a satisfactory title to the whole of said premises shall be $4,500. In the event that condemnation proceedings are instituted to acquire said 10-foot strip, the limitation of 30 days shall not apply until after such condemnation proceedings are finally determined."

On the 16th day of June, 1913, the Board of Education accepted the option and thereby the parties became obligated by the terms thereof. On the 7th day of July, 1913, the school board passed a resolution of which the following is a copy:

"Whereas, the board of education deems the real estate hereinafter described as necessary for school purposes and has been unable to purchase said real estate at a price which is deemed reasonable: Be it resolved, that the common council be requested to take steps necessary to acquire said property by condemnation proceedings. The property so referred to is described as follows: Being a ten-foot strip immediately south of Eugene Field School No. 10, on the west side of Chatham street, and extending seventy-three feet in depth."

On the 8th day of July, 1913, the board of education, through its secretary, notified the common council of this resolution and requested that condemnation proceedings be instituted to acquire the property. At a meeting of the common council held on the 8th day of July, 1913, an ordinance, of which the following is a copy, was enacted:

"The corporation counsel is hereby directed to institute condemnation proceedings for the acquirement of the following described property which it deems necessary for municipal purposes, to wit, for school purposes, being a 10-foot strip south of Public School No. 10, on the west side of Chatham street, extending 73 feet in depth."

On the 7th day of August, 1913, proceedings were begun by the corporation counsel for the condemnation of the lands described in the ordinance of May 13, 1913, and apparently pursuant to that ordinance. The Oaks property was the property described second in that ordinance, and which was purchased by the board of education under the option above described. This action of the corporation counsel's office may have been a mistake, or it may have been by design. The ordinance existed in form, and the requisition of the school board as the basis of the ordinance existed in form, and there also existed the later ordinance of July 8, 1913, and the requisition of the school board as the basis for that ordinance.

The corporation counsel having filed in the office of the city clerk and the county clerk a copy of the ordinance and a map of the real estate sought to be taken pursuant to section 436 of the Charter, and the notice provided by section 437 of the Charter having been published, and a notice having been served upon the owners of the property pursuant to such section, at a term of the County Court of Monroe county held on the 18th day of August, 1913, an order was duly made appointing three commissioners of appraisal to ascertain and determine the compensation which ought justly to be made by the city to the owners of the property, and also a further order authorizing the city to take possession of the property, pursuant to sections 437, 438, and 445 of the Charter. Thereafter hearings were had before the commissioners, evidence was taken, and the parties were heard, and thereafter, and on the 31st day of December, 1913, the commissioners of appraisal duly made their report and awarded to Levi Finestone and Jennie Finestone for their interest in the alleyway, they being the only persons interested in the alleyway, aside from the plaintiff, as follows:

"To Levi Finestone and Jennie Finestone, for their interest in and to the alley laid off the rear end of lots numbers 1 and 2 of the G. W. Pratt subdivision, the sum of three hundred and fifty dollars ($350.00). * * * It appears from the evidence that the Monroe County Savings Bank has a mortgage lien on the Finestone interest."

This report and award also contained the following:

"And it appearing from the evidence produced before us that the city has agreed with Louise E. Oaks as to the amount that shall be paid her for the rest of the land taken in this proceeding, we make no findings with respect to the amount to be paid said Louise E. Oaks therefor."

This report and award was presented to the common council on the 13th day of January, 1914, and January 27, 1914, was assigned as the time for hearing objections to the confirmation thereof pursuant to section 444 of the charter as amended by chapter 384 of the Laws of 1911. Thereafter, and on the 24th day of February, 1914, the law committee of the common council made its report to that body, recommending the rejection of the report and stating that in the opinion of the committee the determination reached by the commissioners was erroneous and would not be sustained upon appeal. Thereupon the common council adopted an ordinance authorizing the corporation counsel to apply for the appointment of new commissioners of appraisal in the proceeding, and to make upon behalf of the city a stipulation to vacate and set aside the report, appraisal, and award of the commissioners.

On the 1st day of June, 1914, an application to the County Court, made by the corporation counsel, for an order vacating and setting aside the order appointing said commissioners of appraisal and vacating their report, and for the appointment of new commissioners, was denied. Thereafter, and on the 23d day of June, 1914, the common council adopted an ordinance rejecting the report of the commissioners of appraisal dated December 31, 1913, above referred to. According to section 444 of the Charter, as amended by chapter 384 of the Laws of 1911, the rejection of the report became a bar for one year to the commencement of a new condemnation proceeding.

[1] While the common council had the power to reject the report of the commissioners of appraisal, in view of the contract with the plaintiff, it was required to act in good faith and for a sufficient reason. The effect of the proceedings up to the time of the filing of the report of the commissioners of appraisal was legal, and the report, if it had been confirmed, would have resulted in condemning the 10-foot right of way. Whatever may have been the effect of the ordinance of May 13, 1913, the later ordinance of July 8, 1913, contained ample authority for the condemnation of the right of way. It is not perceived that the error of the corporation counsel's office, assuming it to have been error, whereby more property according to the petition was sought to be condemned than was necessary, could harm the owners of the right of way, since they were made parties, appeared in the proceeding, were heard, and their rights fully protected. The learned trial judge has found that there were no objections made, filed in, or presented to the county court at the time of the application for the ap-

pointment of the commissioners of appraisal and no objections as to the validity of said proceedings were made, filed with, or presented to the law committee of the common council, nor to the common council, when the report of the commissioners of appraisal was filed with or under consideration in the common council. The minutes of the condemnation proceedings were put in evidence on the trial, but do not appear in the record, so that we may safely assume that no objection on the part of the owners of the right of way was made to the proceedings on the hearing.

[2] There is no dispute but that the plaintiff acted in good faith in the premises, and we think it would be inequitable and unjust for the city of Rochester through its law department to deprive her of the money due upon the contract of the school board with her by delays such as this record discloses. Whether the condemnation proceedings were valid or void, so far as other parties are concerned, we think, as between the city and the plaintiff, the award of the commissioners of appraisal should be held to be legal, and, assuming that the 24th day of February, 1914, was the time when the condemnation proceedings should have been finally determined, 30 days from that date the plaintiff would have been entitled to her money under the contract. As the board of education has been in possession of the plaintiff's property since about the 18th day of August, 1913, we think she should be awarded a judgment for $4,500, less the award of $350 to the Finestones; that is, $4,150, with interest thereon from March 26, 1914. The judgment appealed from should be reversed, with costs, and findings disapproved, and additional findings made, and judgment directed for the plaintiff in accordance with this opinion, with costs. All concur.

Judgment reversed, with costs, and judgment directed in favor of the plaintiff, with costs, in accordance with the opinion by DE ANGELIS, J. Order to be settled before Mr. Justice DE ANGELIS on two days' notice, at which time findings to be disapproved, and proposed additional findings to be made, may be submitted for settlement. All concur.